**ESTATE OF Bernard L. CURRY, Union Bank and Trust of New Albany, Executor, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. NA 80–186–C.**

United States District Court,
S.D. Indiana,
New Albany Division.

July 26, 1982.

**48**

Charles F. Cremer, Jr. & Co. by Charles F. Cremer, Jr., Indianapolis, Ind., for plaintiff.

Sarah E. Barker, U.S. Atty., Indianapolis, Ind. by Vicki G. Cheikes, Trial Div., Dept. of Justice, Washington, D.C., for defendant.

## JUDGMENT AWARDING ATTORNEY FEES AND EXPENSES

HOLDER, District Judge.

The issues of the February 22, 1982 Application of the plaintiff, Estate of Bernard L. Curry, Union Bank and Trust of New Albany, Executor, for Fees and Other Expenses was noticed for an evidentiary hearing for May 14, 1982 in the United States Court House, New Albany, Indiana. The Court granted a continuance. Thereafter, the evidence on the issues was stipulated on June 14, 1982 and an evidentiary hearing was obviated by agreement of the parties.

The Court being advised in the matter by the briefs of the parties does now find, conclude and adjudge the issues of fact and law of the matter.

The Estate Tax Examiner of the Internal Revenue Service assigned to the audit of the Federal Estate Tax Return in the Bernard L. Curry Estate would not settle the issue of the valuation of all stock owned by the decedent in B.L. Curry & Sons, Inc. for a value less than $760,000.00, the value of the stock as determined by the National Valuation Company because he considered its appraisal to be correct, and because his settlement authority was limited and could not be based upon hazards of litigation. The taxpayer's representatives attempted to point out to the Estate Tax Examiner what were believed to be defects in the National Valuation Company appraisal. The taxpayer did not elect to protest to the Appeals Division of the Internal Revenue Service (which had greater settlement authority), the proposed assessed deficiency in

estate taxes which deficiency was based upon the government claiming that the decedent's shares in B.L. Curry & Sons, Inc. had a value of $760,000.00 on the date of his death. Following the assessment of additional estate taxes based upon the Internal Revenue Service valuing the decedent's interest in B.L. Curry & Sons, Inc. at $760,000.00, the proper amount of taxes and interest thereon were paid, claim for refund was timely filed and denied and the within litigation therein timely commenced. Plaintiff filed its complaint against defendant on December 29, 1980 and the action was pending on October 1, 1981. Plaintiff, Union Bank and Trust of New Albany, is Executor of the Estate of Bernard L. Curry, an individual whose net worth did not exceed $1,000,000.00 at any time, and such Bank is a corporation having no more than 500 employees at the time the action was filed. Plaintiff is the prevailing party in the action in that the jury returned the verdict in its favor on October 22, 1981. In accordance with the verdict by the jury, the Court on January 22, 1982 rendered judgment in favor of plaintiff in the amount of $209,904.59 in tax plus $21,139.33 in assessed interest, plus statutory interest as allowed by law, with costs to plaintiff. Plaintiff has filed its Application for Fees and Other Expenses within thirty days of final judgment in the action. The government has timely filed its Notice of Appeal and the proper authorization for appeal has been granted.

Plaintiff in its answers to interrogatories propounded by the government pointed out what it believed to be defects in the government's appraisal by the National Valuation Company. The Court conducted a pre-trial conference in this matter on August 25, 1981 at which time the parties agreed, and the Court ordered, that all discovery be completed by October 1, 1981. The government employed an additional appraiser of the B.L. Curry & Sons, Inc. stock owned by the decedent at the time of his death sometime during the month of September, 1981. In an October 5, 1981 telephone conference between the attorneys for the government and the taxpayer, the taxpayer's attorney

denied the government lawyer's request that its newly hired appraiser be permitted to visit the B.L. Curry & Sons, Inc. premises on October 7, 1981, because discovery in the case was concluded.

During the pendency of the litigation the Justice Department indicated a willingness to recommend a settlement of the case for a value of the decedent's stock in B.L. Curry & Sons, Inc. of $550,800.00, such value being arrived at by assigning a value of $255.00 per share to each of the decedent's 2,160 shares which was the liquidation value assigned to such shares by the plaintiff's expert witness. The taxpayer made no specific dollar amount of a settlement proposal.

At trial the government did not call the National Valuation Company appraiser or attempt to use at trial the valuation report of the National Valuation Company.

During trial and prior to the return of the jury verdict, the plaintiff taxpayer's attorneys approached the government concerning the possible settlement of the case but were told that there was insufficient administrative time for the government to enter into a settlement of the case.

At all relevant times, the decedent, B.L. Curry, and his estate, at the time this action was filed, had a net worth that did not exceed $1,000,000.00. The executor, Union Bank and Trust of New Albany, is a corporation having not more than 500 employees at the time this action was filed.

The plaintiff incurred legal fees and litigation expenses in prosecution of its claim for refund in the total amount of $39,851.72 which fees and expenses are reasonable and were necessarily incurred.

The position of the defendant was not substantially justified and no special circumstances make an award unjust.

The government relied on the National Valuation Company appraisal in negotiating with plaintiff before the Internal Revenue Service and in all pre-trial negotiations, and then abandoned the National Valuation Company's appraisal on the eve-of-trial. The valuation report contained material errors and it was confusing and not in accord with normal appraisal methods. It did not assign the same value to both classes of stock which the government argued at trial and now asserts in its appeal. For four years through the audit process, the denial of plaintiff's Claim for Refund, the pleading stage of the case, through discovery and through the pre-trial conference it stood on such appraisal. A week or so before trial the government abandoned such appraisal which had been the basis for the Internal Revenue Service Examiner refusing to consider any settlement of the case during its audit. In trial the government produced a newly hired expert as its only witness for appraisal of the corporate stock in issue. This witness had not prepared a written appraisal report, had not viewed the corporate premises, had not interviewed corporate management or anyone connected with the company, had not seen the plant and equipment, had not interviewed any of the stockholders, had not consulted with anyone in the veneer business, had not consulted with any accounting people with experience in the veneer industry, and he had no prior appraisal experience in the veneer industry. The family of this deceased was subjected to protracted unnecessary litigation. The government failed to present any credible evidence to support its position or rebut the plaintiff's evidence.

The attitude and position of the government in this matter are demonstrated by an unsupportable in fact stubborn conclusion of the government, and adopted it and carried it forward, from the beginning (audit of the return) to the end (trial conclusion) without justification. The Estate Tax Examiner of the Internal Revenue Service assigned to audit the Federal Estate Tax Return in Bernard L. Curry Estate refused to settle the issue of the valuation of all stock owned by decedent in B.L. Curry & Sons, Inc. for a value less than $760,000.00, the value of the decedent's holdings in such company according to the National Valuation Company appraisal, which appraisal was procured by the government. The plaintiff's representatives attempted to point out to the Estate Tax Examiner what were believed to be defects in the National

Valuation Company appraisal. The Estate Tax Examiner refused to settle the case on the grounds that he could not settle at the amount less than the $760,000.00 arrived at by the National Valuation Company appraisal. This figure was almost four times the amount of the jury verdict. During the pendency of the litigation the government representative indicated a willingness to recommend a settlement of the case for a value of the decedent's stock in B.L. Curry & Sons, Inc. of $550,800.00, such value being arrived at by assigning a value of $255.00 per share to each of the decedent's 2,160 shares which was the liquidation value assigned to such shares by the plaintiff's expert witness. This figure was almost three times the amount of the jury verdict. Plaintiff in its answers to interrogatories propounded by the government pointed out what it believed to be defects in the government's appraisal by the National Valuation Company. Prior to trial the government was given a copy of the plaintiff's expert's appraisal report showing the value of the stock at $196,500.00, and this same report was the subject of discovery after the litigation commenced. The government employed an additional appraiser of the B.L. Curry & Sons, Inc. stock owned by the decedent at the time of his death sometime during the month of September, 1981— nearly four years after their other appraisal which had been stated to be the basis for their position. At trial the government did not call the National Valuation Company appraiser or attempt to use at trial the valuation report of the National Valuation Company. During trial and prior to the return of the jury verdict, the plaintiff taxpayer's attorneys approached the government lawyers concerning the possible settlement of the case but were told that there was insufficient time for the government to enter into a settlement of the case. They said they just couldn't handle it administratively. The jury on October 22, 1981 returned a verdict for the plaintiff valuing the stock at $196,500.00, the exact amount certified to by plaintiff's expert. This amount was substantially less than the value claimed by the government in the National Valuation Company appraisal ($760,000.00), the Moore eve-of-trial appraisal ($627,480.00), and the amount at which the government was willing to settle the case ($550,800.00).

The Court has jurisdiction of the parties and of the subject matter of the application for the assessment of attorney fees, expenses and costs of the action for a refund of alleged illegally assessed tax under 28 U.S.C. § 2412.

The plaintiff has maintained its burden of proof of the facts of each of the essential legal elements of its application.

The Estate of Bernard L. Curry is an individual within the meaning of 28 U.S.C. § 2412. Union Bank and Trust of New Albany, Executor of the Estate of Bernard L. Curry, Deceased, is the real party in interest and is an individual within the meaning of 28 U.S.C. § 2412 and is a distinct separate individual from the entity Union Bank and Trust of New Albany.

The plaintiff prevailed in the found action even though the government has not exhausted its final appeal.

The position of the government in plaintiff's claim for refund of such alleged assessment of tax was not substantially justified and no special circumstances make an award unjust for the claimed fees and other expenses by plaintiff of $39,851.72.

The position of the government had no reasonable basis in law and fact.

The plaintiff is entitled to a full award of its fees and expenses which include fees and expenses for the period prior to and after October 1, 1981.

Plaintiff is entitled to a judgment against defendant for fees and expenses as found in the total sum of $39,851.72.

The law is with the plaintiff and against the defendant.

It is ADJUDGED that the defendant is indebted to plaintiff in the sum of $39,851.72 plus statutory costs assessed in the sum of $_____.